UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,     : 15-cr-00348-ERK-VMS
                              :
     - versus -               : U.S. Courthouse
                              : Brooklyn, New York
GUILLERMINA RENDON-REYES,     :
            Defendant         : April 21, 2017
------------------------------X


TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE

**A    P    P    E    A    R    A    N    C    E    S:**


**For the Government**:          **Robert L. Capers, Esq.**
                                 United States Attorney

                         BY:     **Margaret Lee, Esq.**
                                 Assistant U.S. Attorney
                                 271 Cadman Plaza East
                                 Brooklyn, New York  11201


**For the Defendant**:           **Joel S. Cohen, Esq.**
                                 35 Worth Street
                                 3rd floor
                                 New York, NY 10013


**Transcription Service**:       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Ave.
                                 West Islip, New York 11795
                                 laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1              THE CLERK: Criminal Cause for a Change of Plea

2    Hearing, case number 15-cr-348, United States v.

3    Guillermina Rendon-Reyes.

4              Spanish interprter, can you state your name for

5    the record?

6              THE INTERPRETER:  Patrician Triana.

7              THE CLERK:  Thank you.

8              Counsel, can you state your name for the

9    record?

10             MS. LEE:  For the United States, Maggie Lee.

11             Good afternoon, your Honor.

12             THE COURT:  Good afternoon.

13             MR. COHEN:  For Guillermina Rendon-Reyes, Joel

14   Cohen.

15             Good afternoon, Judge.

16             THE COURT:  Good afternoon.

17             And it's Ms. Rendon-Reyes sitting next to you?

18             MR. COHEN:  She is, Judge, to my left.

19             THE COURT:  All right.  For the interpreter, if

20   you don't mind, if you could pull the microphone closer

21   to you so we can be sure to hear what you have to say.

22   Okay?  All right.

23             So we started this proceeding yesterday and I

24   halted it, so that counsel could have a little bit more

25   time to speak with Ms. Rendon-Reyes.  Okay.  So what

3

Proceedings

1    we're going to do is just start over, make sure all the

2    information is in the record together and make sure that

3    Ms. Rendon-Reyes understands everything.

4              So we're literally all on the same page, make

5    sure we have all the same paperwork.  I have the

6    superseding indictment, the plea agreement which is

7    marked as Government's Exhibit 6, the consent to have the

8    plea taken before me, and also the government's

9    description of the statutes and essential elements in

10   this case that relate to the plea agreement.

11             All right.  Is there anything else I should

12   have?

13             MS. LEE:  No, your Honor.

14             MR. COHEN:  No, your Honor.

15             THE COURT:  And defendant's counsel, you have

16   all of those papers?

17             MR. COHEN:  I do.

18             THE COURT:  Or you've seen them?

19             MR. COHEN:  Yes.

20             THE COURT:  All right.  So we're going to start

21   with the government and I asked this question yesterday

22   but again, just so the record is completely clear.  Are

23   there any victims of the offenses and if so, has the

24   government fulfilled its obligation to notify them of the

25   hearing and of their right to attend and be heard?

4

Proceedings

1        MS. LEE:  Yes, your Honor.  There are victims
2  of the offense and we've provided notification of this
3  new plea date.  Our understanding is that none of the
4  victims intend to participate at the plea bu some of the
5  victims intend to participate in some way as to some
6  defendants at the time of sentencing.
7        THE COURT:  Okay.  So, Ms. Rendon-Reyes,
8  yesterday, we administered an oath to you.  We're going
9  to do it again, just to make sure that you remember what
10  it is that you promise.  So, Ms. Quinlan, could you
11  administer the oath to Ms. Rendon-Reyes?
12  G U I L L E R M I N A  R E N D O N - R E Y E S,
13      called as a witness, having been first duly sworn,
14      was examined and testified as follows:
15        THE CLERK:  Thank you.  You can have a seat.
16        All right.  So Ms. Rendon-Reyes, we're starting
17  again, so some of what I am going to say you heard
18  yesterday but I want to make sure that you understand
19  everything.
20        So my name is Vera Scanlon.  I'm a magistrate
21  judge here in this court.  There's another judge, Judge
22  Korman, who is the judge who is handling the criminal
23  case.  If there were a trial, he would be the trial
24  judge.  And he is the judge who will make the ultimate
25  decision as to whether to accept your guilty plea and if

Proceedings

1   he does, to sentence you.

2           So what we're doing today is me explaining and

3   describing to you many of your rights in this criminal

4   proceeding, explaining some of the sentencing process and

5   if you decide you're going to go ahead with your guilty

6   plea, I will listen to your plea but it's Judge Korman

7   who will ultimately decide whether to accept your plea

8   and if he does, to sentence you.

9           Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  So, you have the

12  absolute right to have Judge Korman listen to your plea

13  without any prejudice to you.

14          Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  So as I said earlier, I asked

17  everyone to use the microphones, if not -- not you, Ms.

18  Rendon-Reyes, but the lawers and the interpreter because

19  we're making a recording of today's proceeding.  A

20  transcript of this proceeding and the recording will be

21  prepared by a court reporter and provided to Judge

22  Korman.

23          Judge Korman will review the transcript of

24  today's proceeding in connection with deciding whether to

25  accept your plea and if he does, with your sentence.

6

Proceedings

1              So, do you wish to give up your right to have

2    Judge Korman listen to your plea and instead proceed here

3    before me today?

4              THE DEFENDANT:  No.

5              THE COURT:  Okay.  So why don't you talk with

6    your lawyer about it.

7              THE DEFENDANT:  I don't waive it.

8              THE COURT:  Okay.  It's totally up to you.

9              THE DEFENDANT:  I don't waive it, okay?

10             THE COURT:  Okay.  It's totally up --

11             THE DEFENDANT:  I am guilty of everything that

12   I did.

13             MR. COHEN:  The question that she asked -- if I

14   may, Judge?

15             THE COURT:  All right.  I am going to give you

16   a chance to talk to your lawyer and then I will come back

17   and ask you again.  And again, what you decide is totally

18   up to you.

19   (Counsel and client confer)

20             MR. COHEN:  We're ready, your Honor.  Thank

21   you.

22             THE COURT:  Okay.  So let me just explain what

23   the question is and then whatever your decision is, we'll

24   decide what direction we go with what we're planning to

25   do today.

7

Proceedings

1          So there's two judges assigned to your case.

2    One is the trial judge.  He's a district judge, that's

3    his title and he is the judge who if you have a trial in

4    your case, will conduct the trial.  And if you decide to

5    go ahead with the plea, he will decide whether your plea

6    is a valid plea or not.

7               And if you're convicted either after a trial or

8    with your plea, he is the judge who will sentence you.

9    Okay.

10              What I have been asked to do is to conduct

11   today's proceeding in which I will go over with you your

12   various rights in connection with the criminal case,

13   explain to you how the sentencing process works, go over

14   your plea agreement and if you understand everything, and

15   after that you want to go ahead with your plea, I will

16   listen to the plea.

17              Judge Korman will get a transcript of the

18   recording of today's proceeding.  So he'll know

19   everything that was said here today and he'll make his

20   decisions based on that transcript and any other

21   information provided to him.

22              Okay.  So do you understand the process?

23              THE DEFENDANT:  Yes.

24              THE COURT:  All right.  So you have a choice,

25   totally up to you.  Do you want to go ahead today and

8

Proceedings

1  listen to me explain what I just describe your rights and

2  the sentencing process.  And if you decide you want to go

3  ahead with your plea, tell me or do you want us to find a

4  different date and you can do it before Judge Korman.

5          THE DEFENDANT:  No, right now.

6          THE COURT:  So is it right that you want to go

7  through this process in front of me and have Judge Korman

8  read the transcript of today's proceeding?

9          THE DEFENDANT:  Yes.

10          THE COURT:  All right.  So do you want to give

11  up your right to have Judge Korman listen to your plea

12  and instead plead before me?

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right.  In connection with that

15  decision, I have this piece of paper which in sum says

16  that you agree to proceed before me.

17          Was this form translated for you from English

18  to Spanish?

19          THE DEFENDANT:  Yes.

20          THE COURT:  All right.  Do you understand what

21  the form says?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Did you go over it with your

24  lawyer?

25          THE DEFENDANT:  Yes.

9

Proceedings

1        THE COURT:  Are you in agreement with what it
2   says in this form?

3        THE DEFENDANT:  Yes.

4        THE COURT:  All right.  I am going to point the
5   first signature underneath the text.  Is that your
6   signature?

7        THE DEFENDANT:  Yes.

8        THE COURT:  And then counsel, is that your
9   signature below?

10       MR. COHEN:  It is, your Honor.

11       THE COURT:  And then Ms. Lee, I think was your
12  colleague, Ms. Merkl's signature, is that right?

13       MS. LEE:  It is her signature and then I
14  initialed on the new date.

15       THE COURT:  Okay.

16       MR. COHEN:  My client and I also initialed it
17  (indiscernible), your Honor.

18       THE COURT:  Okay.  All right.  Ms. Rendon-
19  Reyes, where I am pointing here, are those your initials?

20       THE DEFENDANT:  Yes.

21       THE COURT:  Okay.  So do you give your consent
22  to proceed before me voluntarily and of your own free
23  will?

24       THE DEFENDANT:  Yes.

25       THE COURT:   And has anyone threatened you or

10

Proceedings

1    made any promises to you to get you to proceed here

2    before me?

3                 THE DEFENDANT:  No.

4                 THE COURT:  All right.  So in this process

5    today, I am going to have to ask you a number of

6    questions in order to assure myself and Judge Korman that

7    your plea is a valid plea.  If you don't understand

8    anything I say or any of my questions, you can speak to

9    your lawyer about it or you can ask me and I will reword

10   what I said and try to clarify what I have said.

11               Okay.  It's important that you understand every

12   part of today's proceeding.  So if you have any

13   questions, you should feel free to raise them.

14               Do you understand that you have the right to be

15   represented by an attorney at trial and at every other

16   stage of this criminal case including today's proceeding?

17               THE DEFENDANT:  Yes.

18               THE COURT:  And do you understand that if you

19   can't afford a lawyer, one will be appointed to represent

20   you?

21               THE DEFENDANT:  What's that?

22               THE COURT:  Okay.  So you have the right to

23   have a lawyer help you in a criminal proceeding.  All

24   right.  That's a right that you have in the United States

25   in a criminal case.

Proceedings

1          If you can't afford the lawyer, the Court will

2    give you a lawyer.  So Mr. Cohen --

3          MR. COHEN:  Your Honor, if I may?  I --

4          THE COURT:  No, hang on.  Hold on.  Let me

5    finish.  Hold on.

6          So Mr. Cohen is your lawyer here today.  He's

7    been appointed to work as your lawyer on this case.

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  So do you understand

10   that the Court has provided the lawyer for you?

11         THE DEFENDANT:  Yes.

12         THE COURT:  All right.  And that's because you

13   have a right to have an attorney in a criminal case.  All

14   right.

15         So do you want Mr. Cohen to be your lawyer

16   during today's proceeding?

17         THE DEFENDANT:  Yes.

18         THE COURT:  So if at any time you need to speak

19   with Mr. Cohen, just let me know and I'll let you do so.

20         Do you understand?

21         THE DEFENDANT:  Yes.

22         THE COURT:  So earlier, my deputy Ms. Quinlan,

23   administered an oath to you.  That's when  you stood up

24   and raised your right hand.  And in taking that oath, you

25   swore to tell the truth.  So as we go through today's

12

Proceedings

1   proceeding, you need to answer my questions truthfully.

2           If at any time you answer any of my questions

3   falsely, those answers could later be used against you in

4   a different criminal case charging you with the crime of

5   perjury or of making a false statement.

6           Do you understand?

7           THE DEFENDANT:  Yes.

8           THE COURT:  All right.  We're going to start

9   with some questions that are basic background questions.

10          What is your full name?

11          THE DEFENDANT:  Guillermina Rendon-Reyes.

12          THE COURT:  And how old are you?

13          THE DEFENDANT:  46.

14          THE COURT:  And what's the highest level of

15  education that you have completed?

16          THE DEFENDANT:  Third year of elementary

17  school.

18          THE COURT:  And how old were you when you

19  finished school?

20          THE DEFENDANT: I don't remember very well but I

21  think roughly nine years old.

22          THE COURT:  Okay.  And where did you go to

23  school?

24          THE DEFENDANT:  In Mexico.

25          THE COURT:  What was the name of the school?

13

Proceedings

1          THE DEFENDANT:  Maximo Rojas (ph.).

2          THE COURT:  And where was that school located

3     generally?  What city or town?

4          THE DEFENDANT:  In San Miguel Tenancito

5     Clascara (ph.).

6          MS. LEE:  Kenansingo Telaxacalle (ph.), I

7     believe is what she is saying.

8          THE DEFENDANT:  The town is San Miguel

9     Tenansingo (ph.) and it's under the Clascara district.

10          THE COURT:  Okay.  Since you finished that

11     school at about nine years old, have you had any other

12     education?

13          THE DEFENDANT:  No.

14          THE COURT:  All right.  I am going to ask you a

15     different set of questions.  Are you presently or have

16     you recently been under the care of a doctor?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And what have you been under the

19     care of a doctor for?

20          THE DEFENDANT:  I'm a diabetic.

21          THE COURT:  And what does your treatment

22     involve?

23          THE DEFENDANT:  In insulin.

24          THE COURT:  So did a doctor prescribe insulin

25     for you?

14

Proceedings

1          THE DEFENDANT:  Yes.

2          THE COURT:  And how often do you have to take

3    the insulin?

4          THE DEFENDANT:  How?  What do you mean?

5          MR. COHEN:  How often?

6          THE COURT:  Once a day, twice a day, when you

7    eat?  When do you --

8          THE DEFENDANT:  Twice a day.

9          THE COURT:  Okay.  And what time of day about

10   do you take the medicine?

11         THE DEFENDANT:  6:30 in the morning and 4 in

12   the afternoon.

13         THE COURT:  Okay.  Did you take the insulin

14   this morning?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Okay.  Is there anything about the

17   diabetes that would make it hard for you to understand

18   what's going on here today?

19         THE DEFENDANT:  I didn't understand.  What do

20   you mean?

21         THE COURT:  Okay.  So sometimes if people have

22   an illness, for example, if you had the flu, people have

23   a difficult time concentrating and they can't understand

24   what's going on around them.  I want to know if there's

25   anything about the diabetes that makes it hard for you to

Proceedings

1    understand what we're doing here today.

2              THE DEFENDANT:  No.

3              THE COURT:  Okay.

4              THE DEFENDANT:  No.

5              THE COURT:  And is there anything about the

6    insulin that makes it hard for you to understand what's

7    going on in your case?

8              THE DEFENDANT:  No.

9              THE COURT:  Okay.  Besides the insulin, do you

10   take any other medications?

11             THE DEFENDANT:  One more.

12             THE COURT:  And what's the other medication?

13             THE DEFENDANT:  I don't remember but it's for

14   -- I have high cholesterol.

15             THE COURT:  And how often do you take that

16   medicine?

17             THE DEFENDANT:  Once a day.

18             THE COURT:  Okay.  And is that prescribed to

19   you by a doctor?

20             THE DEFENDANT:  Yes.

21             THE COURT:  And did you take the medicine

22   today?

23             THE DEFENDANT:  No.

24             THE COURT:  Did you take it yesterday?

25             THE DEFENDANT:  Yes.

16

Proceedings

1          THE COURT:  Okay.  Is there anything about
2  having high cholesterol that makes it difficult for you
3  to understand what we're doing here today?
4          THE DEFENDANT:  No.
5          THE COURT:  Is there anything about the
6  medicine that you take for the high cholesterol that
7  makes it hard for you to understand what we're doing here
8  today?
9          THE DEFENDANT:  No.
10          THE COURT:  Okay.  So are you being treated for
11  any other medical condition?
12          THE DEFENDANT:  No.
13          THE COURT:  And do you have any medical
14  conditions that are not being treated?
15          THE DEFENDANT:  No, just that it's what it's a
16  -- what it is.
17          THE COURT:  All right.  You feeling healthy
18  today?
19          THE DEFENDANT:  Yes.
20          THE COURT:  All right.
21          THE DEFENDANT:  Thank God, yes.
22          THE COURT:  All right.  We're glad you're
23  healthy.
24          Are you presently or have you recently been
25  treated by a mental health professional, such as a

17

Proceedings

1   psychologist, psychiatrist or a social worker?

2          THE DEFENDANT:  No.

3          THE COURT:  Have you ever been hospitalized or

4   treated for any mental illness?

5          THE DEFENDANT:  No.

6          THE COURT:  Have you ever been hospitalized or

7   treated for an addiction to drugs or alcohol?

8          THE DEFENDANT:  No.

9          THE COURT:  In the past 24 hours, have you

10  consumed any narcotic drugs?

11         THE DEFENDANT:  No.

12         THE COURT:  In the past 24 hours, besides the

13  insulin and the high cholesterol drug, have you taken any

14  medications?

15         THE DEFENDANT:  No.

16         THE COURT:  In the past 24 hours, have you

17  taken any alcohol?

18         THE DEFENDANT:  No, not that either.

19         THE COURT:  Is your mind clear as we sit here

20  today?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Do you understand what's we're

23  doing here today?

24         THE DEFENDANT:  Yes.

25         THE COURT:  All right.  I am going to ask your

18

Proceedings

1   lawyer some questions.

2           Mr. Cohen, have you discussed this matter with

3   your client?

4           MR. COHEN:  I have, your Honor.

5           THE COURT:  And have you had any difficulties

6   communicating with your client?

7           MR. COHEN:  No, I've always used a qualified

8   Spanish interpreter and we've had no difficulty

9   communicating.

10          THE COURT:  In  your opinion, is Ms. Rendon-

11  Reyes capable of understanding the nature of the

12  proceedings?

13          MR. COHEN:  Yes.

14          THE COURT:  And in your opinion, does she

15  understand the rights she'll be waiving by pleading

16  guilty?

17          MR. COHEN:  Yes.

18          THE COURT:  Just so the record is clear, I

19  think I hadn't finished when you answered.

20          MR. COHEN:  I'm sorry, Judge.

21          THE COURT:  Okay.  So the question is in your

22  opinion, does your client understand the rights she'll be

23  waiving by pleading guilty?

24          MR. COHEN:  Yes.

25          THE COURT:  And do you have any doubt as to her

19

Proceedings

1   competence to plead at this time?

2           MR. COHEN:  No, ma'am.

3           THE COURT:  So yesterday you had mentioned that

4   you thought she was anxious or had anxiety.

5           Do you believe she's comfortable enough today

6   to be able to proceed with this plea hearing?

7           MR. COHEN:  I believe she is, your Honor.

8           THE COURT:  All right.  Have you explained to

9   her the sentencing processing and the possible sentencing

10  consequences of a guilty --

11          MR. COHEN:  Yes, I have.

12          THE COURT:  -- of her guilty plea?  Have you

13  explained to her the operation of the sentencing

14  guidelines?

15          MR. COHEN:  I have.

16          THE COURT:  All right.

17          Ms. Rendon-Reyes, have you had a sufficient

18  opportunity to discuss your case with your lawyer, Mr.

19  Cohen?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And have you done so with the

22  assistance of a Spanish language interpreter?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And are you fully satisfied with

25  the representation and legal advice given to you in this

Proceedings

1    case by your lawyer, Mr. Cohen?

2              THE DEFENDANT:  Yes.

3              THE COURT:  All right.  So, there is a document

4    in this case.  I am holding up my copy.  It's called the

5    superseding indictment.  Was this document translated for

6    you from English to Spanish?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Was it translated orally or was it

9    translated in writing?

10             THE DEFENDANT:  In writing.

11             THE COURT:  So it's correct, somebody gave you

12   a written translation of the superseding indictment?

13             THE DEFENDANT:  Yes.

14             THE COURT:  And did you review the indictment

15   indictment with your attorney?

16             THE DEFENDANT:  Yes.

17             THE COURT:  So what's proposed is that you're

18   going to plead guilty to Count 1 and admit to certain

19   racketeering acts, particularly Racketeering Act 5(a),

20   and Racketeering Act 7(a).

21             Did you review those racketeering acts in Count

22   1 with Mr. Cohen?

23             THE DEFENDANT:  Yes.

24             THE COURT:  All right.

25             Mr. Cohen, do you want me to read the

21
Proceedings

1   superseding indictment or the particular charges relating

2   to your client?

3           MR. COHEN:  I don't believe that's necessary,

4   your Honor.

5           THE COURT:  All right.  So Ms. Rendon-Reyes, at

6   this point I am going to explain to you some of your

7   rights in a criminal proceeding in this Court as it

8   relates particularly to your proposed plea.

9           The first and most important thing you should

10  understand is that you do not have to plead guilty, even

11  if you are guilty.  Under the American legal system, the

12  prosecution or the government has the burden of proving

13  the defendant's guilt at trial beyond a reasonable doubt.

14  If the government cannot or does not meet its burden of

15  proof, the jury at the trial has the obligation to find

16  the defendant not guilty even if the defendant did in

17  fact commit the crimes charged.

18          Do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  So for you, you have a choice.

21  It's up to you to decide what to do in your case.  You

22  can withdraw your previously entered plea of not guilty

23  and change it to guilty as I've been told you wish to do

24  or you can go to trial.  If you want to go to trial, you

25  simply say not guilty when I ask you how you plea.

22

Proceedings

1          So you should know that it has sometimes

2    happened in American courtrooms, including in this

3    courthouse, that a jury has returned a verdict of not

4    guilty even though everyone else in the courtroom thought

5    that the defendant was guilty.

6          What the jury's decision meant was not that the

7    defendant wasn't guilty but rather that the government

8    had failed to prove its case.

9          Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  So you have a choice.  You can say

12   to the government, I want to go to trial and as I said

13   earlier, what the government's burden would be at trial

14   would be to prove your guilt beyond a reasonable doubt.

15   And if the government failed, the jury would have to find

16   you not guilty.  So if you want to go to trial, when I

17   ask you how you plead, you would simply say not guilty.

18          So if you plead not guilty, under the

19   Constitution and the laws of the United States of

20   America, you are entitled to a speedy and public trial by

21   jury with the assistance of a lawyer on the charges

22   against you that are contained in this document, the

23   superseding indictment which has been filed with the

24   Court.

25          Do you understand all of those rights?

Transcriptions Plus II, Inc.

23

Proceedings

1           THE DEFENDANT:  Yes.

2           THE COURT:  So were there to be a trial in your

3   case, at that trial, you would be presumed innocent.  You

4   would have not to prove that your innocence.  It's the

5   government's job or the government's burden to overcome

6   the presumption of innocence and prove you guilty by

7   competent evidence and beyond a reasonable doubt.  And if

8   the government failed, the jury would have to find you

9   not guilty.

10          By pleading guilty, you're giving up your right

11  to have the government satisfy its burden of proving your

12  guilt beyond a reasonable doubt.  Instead, you'll be

13  admitting your guilt.

14          Were there to be a trial in your case, at the

15  trial, witnesses for the government would have to come to

16  court and testify in your presence.  Your attorney would

17  have the right to ask those witnesses questions or cross-

18  examine those witnesses.  Your lawyer could object to the

19  evidence that the government wanted to offer.  And your

20  lawyer could offer witnesses and other evidence on your

21  behalf.

22          Your attorney could also subpoena or compel

23  witnesses to come to court and testify.  Your attorney

24  could raise any defenses that you may have in this case.

25          Do you understand all of those rights?

24

Proceedings

1       THE DEFENDANT:  Yes.

2       THE COURT:  All right.  If you decide to plead

3   guilty, and you do, and I recommend to Judge Korman that

4   he accept your plea and he does, you're giving up all of

5   these rights.  You're giving up the right to a trial.

6   You're giving up your right to confront witnesses who

7   testify against you.  You're giving up your right to

8   offer evidence on your own behalf, to challenge the

9   government's case, to cross-examine the government's

10  witnesses, to compel witnesses to come to court and to

11  testify and to raise any defenses that you might have.

12       Do you understand the rights that you are

13  giving up if decide to go ahead with the guilty plea?  I

14  need to hear you answer out loud.

15       THE DEFENDANT:  Yes.

16       THE COURT:  All right.  Do you have any

17  questions  about anything I have said with regards to

18  your right so far?

19       THE DEFENDANT:  No.

20       THE COURT:  Okay.  Were you to persist or stick

21  with your guilty -- your not guilty plea -- sorry -- at a

22  trial in your case, you would have the right to testify

23  on your own behalf if you wanted to do so.  So you could

24  come up, sit in the witness stand and testify in front of

25  the jury and the judge.

25

Proceedings

1          I'm sorry, can you -- thanks.

2          But that would be your choice.  You could not

3    be required to testify.  Under the Constitution of the

4    United States, a defendant in a criminal case cannot be

5    forced to take the witness stand at her own trial and say

6    anything that could be used against her to show that she

7    is guilty of the crime or crimes with which she is

8    charged.

9          So, if you decided not to testify, the judge

10   would tell the jury that the jury could not count that

11   against you.  This would be called exercising your right

12   against self-incrimination.

13         Do you understand that right?

14         THE DEFENDANT:  Yes.

15         THE COURT:  If you plead guilty, I'm going to

16   have to ask you questions about what you did in order to

17   satisfy myself and in turn Judge Korman that you are, in

18   fact, guilty of the charges to which you are pleading

19   guilty.  You are going to have to answer those questions

20   truthfully.  You're going to have to acknowledge your

21   guilt and I'll remind you that you took the oath earlier

22   to tell the truth.  So you will be answering the

23   questions subject to that oath.

24         Do you understand?

25         THE DEFENDANT:  Yes.

Proceedings

1         THE COURT:  so it's not going to be enough for

2   you simply to say that you're guilty.  You're going to

3   have to tell me what it is that you did such that you

4   are, in fact, guilty of the charges to which you are

5   pleading guilty.

6              If you plead guilty and I recommend to Judge

7   Korman that he accept your plea and that is what he does,

8   you'll be giving up all of those constitutional and other

9   rights that I have just discussed.  You will be giving up

10  your right to a trial.  There won't be a trial in your

11  case.  If Judge Korman accepts your plea, he will simply

12  enter a judgment of guilty based on your plea.

13             Do you understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  If after you are sentenced by the

16  district judge, you or your lawyer thinks that the judge

17  didn't follow the law in sentencing you, you can usually

18  appeal your sentence to a higher court.  All right.  So

19  just so you understand, there's this trial court and then

20  there's an appellate court above this court.  The

21  appellate court reviews the decisions of this court if

22  the party or parties appeal the sentence or the

23  conviction.

24             Okay.  That's how the process usually works.

25  In your case, you agreed to a limitation on that right.

27

Proceedings

1   So according to your plea agreement which we're going to

2   talk about in more detail in a little while, you agreed

3   not to file an appeal or challenge by a petition under a

4   particular law or other provisions of the law, the

5   conviction or sentence if the judge imposes a term of

6   imprisonment of 262 months or below.

7            All right.  So do you understand that

8   limitation on your appellate right?

9            THE DEFENDANT:  Yes.

10           THE COURT:  If you decide to go ahead with your

11  guilty plea, you will not except under very limited

12  circumstances, be able to challenge the judgment of

13  conviction by appeal or collateral attack.

14           Do you understand that?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Are you willing to give up your

17  right to a trial and all of the other rights that I have

18  just discussed with you?

19           THE DEFENDANT:  Yes.

20           THE COURT:  All right.  We're going to go over

21  the plea agreement which is marked as Government's

22  Exhibit 6.

23           I am going to ask Mr. Cohen, were all formal

24  plea offers by the government conveyed to Ms. Rendon-

25  Reyes?

28

Proceedings

1          MR. COHEN:  They were, your Honor.  And, in

2   fact, there was significant and long-term negotiation

3   between the parties and the agreement to which Ms.

4   Rendon-Reyes is pleading guilty, was not the government's

5   initial plea offer.  We've discussed -- she and I have

6   discussed the differences between those proposed plea

7   agreements and it's my understanding that she is very

8   satisfied with the agreement that is presently before the

9   Court.

10          THE COURT:  All right.  Ms. Rendon-Reyes, did

11   you hear what Mr. Cohen just said?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Are you in agreement with what he

14   said?

15          THE DEFENDANT:  Yes.

16          THE COURT:  All right.  We're going to look at

17   the last page of the plea agreement.  In the middle of

18   the page, it says, "I have read the entire agreement and

19   discussed it with my attorney."  "I have read the entire

20   agreement and discussed it with my attorney.  I

21   understand all of its terms and am entering into it

22   knowingly and voluntarily."

23          Is that a correct statement?

24          THE DEFENDANT:  Yes.

25          THE COURT:  All right.

29

Proceedings

1          MR. COHEN:  Your Honor, if I may, just so that

2  the record is absolutely clear, she didn't review the

3  agreement because she doesn't read English but as your

4  Honor knows, it was translated verbatim to her yesterday

5  in the courtroom and prior to that it's substantially

6  translated and I'm satisfied that she understands its

7  terms.

8          THE COURT:  All right.  Ms. Rendon-Reyes, was

9  the plea agreement which is Government's Exhibit 6

10  translated for you from English to Spanish?

11          THE DEFENDANT:  Yes.

12          THE COURT:  All right.  Mr. Cohen, who did the

13  translation?

14          MR. COHEN:  I beg your pardon, your Honor?

15          THE COURT:  Who did the translation?

16          MR. COHEN:  It was done yesterday by Rosa

17  Olivera and by Estrelita, whose last name I am afraid I

18  don't know but she is one of the official court

19  interpreters.

20          THE COURT:  All right.  Ms. Rendon-Reyes, I am

21  holding up my copy of the plea agreement which has been

22  marked as Government's Exhibit 6 and I'm pointing in the

23  middle of the page above where your name is printed.

24          Is that your signature?

25          THE DEFENDANT:  Yes.

Proceedings

1    THE COURT:  Mr. Cohen is that your signature

2  below that?

3    MR. COHEN:  It is, your Honor.

4    THE COURT:  And then I think it's Ms. Plested,

5  is that her signature below there?

6    MR. COHEN:  I can't see that, Judge.

7    THE COURT:  I'll ask Ms. Quinlan to show you

8  the form.

9    MR. COHEN:  Thank you.

10    THE COURT:  Well, you can tell me what it

11  indicates.

12    MR. COHEN:  Yes, your Honor.

13    THE COURT:  Okay.  And she translated part of

14  the agreement, right?  And Ms. Olivera translated the

15  other part, is that correct?

16    MR. COHEN:  Yes, your Honor.

17    THE COURT:  All right.  For the government, Ms.

18  Lee, is the first signature on the page, your signature?

19    MS. LEE:  It is, your Honor.

20    THE COURT:  And below that is Ms. Merkl's

21  signature?

22    MS. LEE:  It is.

23    THE COURT:  And she was here yesterday for the

24  proceeding but is it correct that her relationship to

25  this case is she is the supervising United States

31

Proceedings

1    Attorney on this case?

2              MS. LEE:  Yes.

3              THE COURT:  I know she said you were working

4    with colleagues as well yesterday, right?

5              MS. LEE:  She is -- she has supervisor

6    authority in the office and we are co-prosecuting this

7    case.

8              THE COURT:  All right.  Ms. Rendon-Reyes, was

9    the entire plea agreement translated for you from English

10   to Spanish?

11             THE DEFENDANT:  Yes.

12             THE COURT:  And was it done by someone who was

13   fluent in Spanish?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And did you go over the plea

16   agreement with Mr. Cohen?

17             THE DEFENDANT:  Yes.

18             THE COURT:  And in your communications with Mr.

19   Cohen, did you have the assistance of a Spanish language

20   interpreter?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Do you understand all of the terms

23   of the plea agreement?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Does this written plea agreement

32

Proceedings

1  which is marked as Government's Exhibit 6 accurately

2  represent the entire understanding or agreement that you

3  have with the United States government?

4                THE DEFENDANT:  Yes.

5                THE COURT: Has anyone made any promise or

6  assurance to you that's not included in this document to

7  persuade you to accept the plea agreement?

8                THE DEFENDANT:  No.

9                THE COURT:  Has anyone threatened you in any

10  way in order to get you to accept the plea agreement?

11                THE DEFENDANT:  No, no.

12                THE COURT:  Mr. Cohen, have you read the entire

13  plea agreement?

14                MR. COHEN:  Yes, ma'am.

15                THE COURT:  And have you reviewed it with your

16  client?

17                MR. COHEN:  I beg your pardon?

18                THE COURT:  Have you reviewed it with your

19  client?

20                MR. COHEN:  I have.

21                THE COURT:  And do you believe she understands

22  the entire agreement?

23                MR. COHEN:  Yes.

24                THE COURT:  And does Government's Exhibit 6,

25  the plea agreement, reflect your understanding of the

33

                              Proceedings

1    entire agreement that your client has entered into with

2    the government?

3            MR. COHEN:  Yes.

4            THE COURT:  Ms. Rendon-Reyes, if you fail to

5    comply with this agreement that you have with the United

6    States government, the government will be released from

7    its obligations but you will not be released from your

8    plea of guilty.

9            Do you understand that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Okay.  All right.  We're going to

12   go over the sentencing scheme applicable in your case.

13   This is outlined in paragraph 1 of the plea agreement

14   which is marked as Government's Exhibit 6.

15           As I said earlier, what's been proposed is that

16   you're going to plead guilty to  Count 1 of the

17   superseding indictment which charges you with violations

18   of particular federal laws, 18 USC Sections 1962(c) and

19   you're also going to admit as racketeering acts, your

20   participation on sex trafficking of the minor known as

21   Jane Doe 3, who is referred to in Racketeering Act 5(a)

22   and Count 11 of the superseding indictment, as well as

23   sex trafficking of the minor known as Jane Doe 5 as

24   alleged in Racketeering Act 7(a) and Count 14 of the

25   superseding indictment.

34

Proceedings

1          This count carries the following statutory

2    penalties: a maximum term of imprisonment is life.  The

3    minimum term of imprisonment is zero years.  The maximum

4    term of supervised release is five years.  That would

5    come after any term of imprisonment.

6              If a condition of supervised release were to be

7    violated, you may be sentenced to up to five years

8    without credit for pre-release imprisonment --

9              THE INTERPRETER:  Just a second, your Honor, if

10   I may?

11             THE COURT:  Sure.  So you won't get credit for

12   the time that you were in prison before you were released

13   because the way it works is you have a sentence, and

14   after that comes supervised release.  There are many

15   rules that are imposed if someone is on supervised

16   release.

17             There are many restrictions that are usually

18   placed on their liberty including travel limitations,

19   requirements that they report to a probation officer and

20   other restrictions.

21             So if you violate a condition of release, you

22   could be sentenced for up to five years imprisonment and

23   in that calculation of the five years, there would be no

24   credit for imprisonment prior to pre-release -- so prior

25   to your release from prison or for time previously served

35
                          Proceedings

1  on post-release supervision.

2          Do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Okay.  There could also be a

5  maximum fine imposed of the greater of $250,000 or twice

6  the gross gain or twice the gross loss.

7          Restitution is mandatory in the full amount of

8  each victim's losses as determined by the Court.

9          There has to be a $100 special assessment

10  imposed.

11          There are three other important possible

12  sentencing consequences.  All right.

13          First let me ask the government, was Ms.

14  Rendon-Reyes extradited to the United States or was she

15  in the United States?

16          MS. LEE:  She was extradited, your Honor.

17          THE COURT:  All right.  The possible sentencing

18  consequence to the extent you ahve an immigration status

19  in the United States is removal from the United States.

20  So if you're not a United States citizen, your guilty

21  plea could have a very significant effect on any

22  immigration status you have in the United States.

23          There are many crimes which are what we call

24  removable offenses including what is proposed that you

25  are going to plead guilty to which are racketeering

36

Proceedings

1  involving sex trafficking and interstate prostitution.

2          For these offenses, your removal from the

3  United States is presumptively mandatory.  However,

4  removal and other immigration consequences are not

5  decided in this Court but are decided by a different

6  agency of the U.S. government.

7          So nobody here, not your lawyer, not the

8  government's lawyer, not the Court, can tell you with

9  certainty the effect of your conviction on your

10  immigration status.

11          Your plea agreement indicates that despite the

12  possible serious immigration consequences, including your

13  automatic removal from the United States, you still want

14  to go ahead with your guilty plea regardless of those

15  immigration consequences.

16          Is that correct?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And do you understand that the

19  automatic removal from the United States could occur

20  after you serve a term of imprisonment in the United

21  States?

22          THE DEFENDANT:  Yes.

23          THE COURT:  All right.  Did you have a

24  sufficient opportunity to consult with Mr. Cohen about

25  the possible immigration consequences?

Proceedings

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  Additional possible

3    sentencing consequences include being subject to sex

4    offender registration pursuant to a particular federal

5    law.  Those requirements are described in paragraph 11 of

6    your plea agreement.

7          Do you understand paragraph 11?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And did you have a sufficient

10   opportunity to review it with Mr. Cohen?

11         THE DEFENDANT:  Yes.

12         THE COURT:  All right.  Additionally, a

13   possible sentencing consequence is criminal forfeiture

14   which is described in paragraphs 6 and 7 of the plea

15   agreement.

16         Do you understand paragraph 6 and 7?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Do you agree with what they say?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Did you have a sufficient

21   opportunity to review them with Mr. Cohen?

22         THE DEFENDANT:  Yes.

23         THE COURT:  All right.  I am just going to hold

24   up the copy of your plea agreement from yesterday.  There

25   are some handwritten changes which in sum say that you're

38

Proceedings

1  going to provide your financial statement within 30 days

2  and that form will be attached as Exhibit A to the plea

3  agreement.

4          All right.  There are some initials next to

5  that change.  First, Ms. Rendon-Reyes, are those your

6  initials that I am pointing to?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And Mr. Cohen, are those your

9  intials on this page?

10          MR. COHEN:  Yes.

11          THE COURT:  And Ms. Lee, those are yours?

12          MS. LEE:  Yes.

13          THE COURT:  All right.  Ms. Rendon-Reyes, do

14  you|understand that parole has been abolished in the

15  federal system.  So, if you're sentenced to a prison

16  term, you will not be released on parole but instead you

17  will be required to spend the entire period of

18  imprisonment in prison.

19          Do you understand that?

20          THE DEFENDANT:  Yes, yes, yes.

21          THE COURT:  Okay.  Let me explain how the

22  sentencing process works.  In your case the sentencing

23  judge is going to be Judge Korman.  Judge Korman does not

24  have complete discretion to impose a sentence outside of

25  the statutory minimum and maximum sentences set forth in

Proceedings

39

1    the statute.

2           So as we went over, the maximum term of

3    imprisonment is life and the minimum term of imprisonment

4    in your case is zero.

5           Do you understand?

6           THE DEFENDANT:  Yes.

7           THE COURT:  As a first step in the sentencing

8    process, the judge will consider what are called advisory

9    sentencing guidelines.  They've been issued by the United

10   States Sentencing Commission to help the judge determine

11   what is a reasonable sentence in a criminal case.

12          As a second step, the judge must consider

13   whether there are any factors present in your case that

14   would allow him to depart from the advisory sentencing

15   guidelines.  It's possible for a judge to depart either

16   upwardly or downwardly.

17          Third, the judge has to consider factors set

18   forth in a particular federal statute that we refer to as

19   18 United States Code, Section 3553(a).  The judge

20   considers the factors in that statute against all of the

21   facts and circumstances of your case and it may be based

22   on all of this analysis that the judge decides to impose

23   a non-guideline sentence.

24          All right.  But bottom line for you is that

25   until the date of sentencing when the judge has reviewed

40

Proceedings

1   all of the material submitted about you, including a pre-

2   sentence report, and hears from you, from your lawyer and

3   the government, and possibly from some of the victims,

4   you cannot know with certainty what the sentencing

5   guidelines  will be in your case or whether there will be

6   grounds to depart from them, either upwardly or

7   downwardly.  You cannot know whether the Court will

8   impose a guideline or a non-guideline sentence.

9           So do you understand the process?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  Despite the uncertainty

12  because the government or the lawyer may not have all the

13  facts or the facts may change between now and the date of

14  sentence, or they might simply make a mistake, I'm going

15  to ask the lawyers to give their best estimate as to what

16  the sentencing guidelines are likely to be for your case.

17          So the government's perspective in this is

18  outlined in paragraph 2 of your plea agreement.  So I'm

19  going to ask Ms. Lee to summarize it.

20          MS. LEE:  The government estimates a total

21  offense level of 39, taking into account a three point

22  reduction for acceptance of responsibility, an adjusted

23  offense level of 36, assuming that the defendant falls

24  within a criminal history category one, that will result

25  in a guidelines range of 188 to 235 months.

41

Proceedings

1          That calculation incorporates a two point

2    reduction for a global disposition which is set forth in

3    the plea agreement and is contingent on all eight

4    defendants pleading guilty.  Ms. Rendon-Reyes is the

5    eighth defendant to plead guilty and although today is

6    the day after the date in the plea agreement, the

7    government finds that that's in compliance with the

8    terms.  So assuming that the pleas are all accepted, then

9    the global disposition terms will have been met.

10          THE COURT:  Okay.  Ms. Rendon-Reyes, do you

11   understand what Ms. Lee just said?

12          THE DEFENDANT:  Yes.

13          THE COURT:  All right.  Mr. Cohen, what's your

14   take on what the sentencing guideline may be for your

15   client?

16          MR. COHEN:  I beg your pardon, your Honor?

17          THE COURT:  What's your best estimate as to

18   what the sentencing guideline may be for your client?

19          MR. COHEN:  I'm in accord with the government's

20   view of what the guidelines are and I've discussed those

21   guidelines with Ms. Rendon-Reyes.

22          THE COURT:  And do you believe she understands

23   everything that you have told her?

24          MR. COHEN:  I do.

25          THE COURT:  All right.  Ms. Rendon-Reyes, do

42

Proceedings

1  you understand that the estimate provided by the

2  government and which Mr. Cohen agrees, is not binding on

3  the government, probation or the Court?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Do you understand that if the

6  lawyers are wrong, you would not be permitted to withdraw

7  your plea of guilty on this basis?

8              THE DEFENDANT:  I didn't understand that.

9              THE COURT:  Okay.  So, I asked the lawyers,

10  particularly Ms. Lee, to give you their best estimate as

11  to what the sentencing guidelines are going to be in your

12  case and she did that and then Mr. Cohen agrees with her

13  estimate.

14             So those are what -- if they have gotten it

15  right, those are what the sentencing guidelines are

16  likely to be when you get to the date of sentencing.  But

17  they could be wrong or the facts could change or unknown

18  circumstances could arise.  But if the lawyers are wrong,

19  that's not a basis for you to withdraw your guilty plea.

20             Do you understand?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Okay.  So your ultimate sentence

23  could turn out to be different from the estimate that Ms.

24  Lee and your attorney have stated here today.

25             Do you understand?

Proceedings

1          THE DEFENDANT:  Yes.

2          THE COURT:  And it could turn out for various

3     reasons including the application of other statutory

4     sentencing factors that the judge decides to impose a

5     sentence higher than the one called for by the advisory

6     sentencing guidelines.

7               Just hold on one second.  Okay.

8               All right.  So, do you understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  All right.  So if that happens,

11     that is not going to be a reason that you would be

12     allowed to withdraw your guilty plea.

13               Do you understand?

14          THE DEFENDANT:  Yes.

15          THE COURT:  All right.  Just because nobody

16     could tell you ahead of time, that's not a reason that

17     you will be allowed to withdraw your guilty plea.

18               Do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  All right.  Let's go back to the

21     plea agreement for a moment.  I've highlighted a few of

22     the paragraphs but let me just make sure.

23               Do you understand the entire plea agreement?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And did you have a sufficient

44

Proceedings

1   opportunity to review the plea agreement which is

2   Government's Exhibit 6 with Mr. Cohen?

3                THE DEFENDANT:  Yes.

4                THE COURT:  And do you want to go ahead with

5   your guilty plea subject to the terms of this plea

6   agreement?

7                THE DEFENDANT:  Yes.

8                THE COURT:  And do you want to go ahead with

9   your guilty plea even though it's very likely that any

10  guilty plea if accepted would result in serious

11  immigration consequences including your automatic removal

12  from the United States?

13               THE DEFENDANT:  Yes.

14               THE COURT:  Okay.  All right.  To the extent

15  you have certain rights in the United States, if you are

16  adjudicated guilty of a felony or felonies, that could

17  result in the deprivation of certain civil rights.  Those

18  rights include the right to vote, hold public office,

19  serve on a jury, and possess a firearm.

20               So to the extent you do have those rights in

21  the United States which you may or may not, if you are

22  adjudicated guilty of a felony, you could lose those

23  rights.

24               Do you understand?

25               THE DEFENDANT:  Yes.

45

Proceedings

1          THE COURT:  All right.  So I've gone over many
2  of the consequences to you or possible consequences to
3  you if the district judge accepts your plea.
4          Do you understand all of these consequences?
5          THE DEFENDANT:  Yes.
6          THE COURT:  Have you gone over them with Mr.
7  Cohen?
8          THE DEFENDANT:  Yes.
9          THE COURT:  Did you have sufficient time and
10  opportunity to consult with Mr. Cohen?
11          THE DEFENDANT:  Yes.
12          THE COURT:  All right.  I'm going to switch to
13  asking some questions of the lawyers.  So for the
14  government, are the elements of the count to which Ms.
15  Rendon-Reyes going to plead guilty set forth in the
16  submission that you have, statutes and essential
17  elements?
18          MS. LEE:  Yes, your Honor.
19          THE COURT:  And is the government prepared to
20  prove at trial Ms. Rendon-Reyes' guilt?
21          MS. LEE:  Yes, your Honor.
22          THE COURT:  And what evidence owuld the
23  government offer at trial in order to prove her guilt?
24          MS. LEE:  The government were to offer witness
25  testimony and documentary evidence including but not

Proceedings

1   limited to the testimony of many of the victims set forth

2   in the superseding indictment, border crossing records,

3   money remitter records and wiretap records.

4          In order to establish that in or about and

5   between December 2004 and November 2015, in Queens, New

6   York and elsewhere, the Rendon-Reyes trafficking

7   organization was a criminal organization.  It operated in

8   Queens, Atlanta, Jefferson, Alabama, Mexico, as well

9   other locations, members and associates of the Rendon-

10  Reyes trafficking organization engaged in various forms

11  of criminal activity including but not limited to sex

12  trafficking of women and minor girls, prostitution, alien

13  smuggling, alien harboring, and money laundering.

14         The enterprise trafficked women from Mexico

15  into the United States and throughout the country for the

16  purposes of prostitution for their financial gain.

17         The defendant was a member of the Rendon-Reyes

18  trafficking organization and in furtherance of that

19  organization, she committed Racketeering Acts 5(a) and

20  7(a) of the superseding indictment, among others and

21  these acts included the sex trafficking of minors Jane

22  Doe 3 and Jane Doe 5 and the government would establish

23  with respect to Racketeering Act 5(a) that in or about

24  and between March 2006 and October 2006, the defendant

25  knowing that force, fraud, and coercion had been used,

47

Proceedings

1  caused Jane Doe 3, who was a minor at the time, to be

2  brought from Mexico to the United States for the purposes

3  of prostitution.

4          And with respect to Racketeering Act 7(a), the

5  government would establish that in or about June 2007

6  through February 2009, the defendant knowing that force,

7  fraud and coercion had been used, caused Jane Doe 5, who

8  was a minor at the time, to be brought from Mexico to the

9  United States for the purposes of prostitution.

10          THE COURT:  All right.  Mr. Cohen, do you agree

11  the government would be able to prove Ms. Rendon-Reyes'

12  guilt at trial?

13          MR. COHEN:  I do.

14          THE COURT:  Based on the evidence just

15  described by the government?

16          MR. COHEN:  Yes, Judge.

17          THE COURT:  Do you know of any reason why Ms.

18  Rendon-Reyes should not plead guilty?

19          MR. COHEN:  No.

20          THE COURT:  Are you aware of any viable legal

21  defense to the charges against her?

22          MR. COHEN:  No.

23          THE COURT:  In your professional opinion, is

24  this plea in your client's best interest?

25          MR. COHEN:  Absolutely.

48

Proceedings

1      THE COURT:  All right.  Ms. Rendon-Reyes, do
2  you need an opportunity to speak with Mr. Cohen?
3      THE DEFENDANT:  Yes.
4      THE COURT:  All right.  We'll give you a minute
5  or however long you need.  When you're ready, let me
6  know.
7  (Counsel and client confer)
8      THE COURT:  Okay, you're ready?
9      MR. COHEN:  Yes.
10      THE COURT:  Okay.  Ms. Rendon-Reyes --
11      MR. COHEN:  There was a misunderstanding,
12  Judge.
13      THE INTERPRETER:  If I may, your Honor, the
14  interpreter misinterpreted the last question and so right
15  now I cleared it up with the attorney.
16      THE COURT:  Okay.  So Ms. Rendon-Reyes, would
17  you like an opportunity to consult with your attorney
18  about anything?
19      THE DEFENDANT:  No.
20      THE COURT:  All right.  So, Ms. Rendon-Reyes,
21  are you ready to plead at this time?
22      THE DEFENDANT:  Yes.
23      THE COURT:  Okay.  So Ms. Rendon-Reyes, with
24  regard to Count 1 of the superseding indictment, how do
25  you plead, guilty or not guilty?

49

                              Proceedings

1           THE DEFENDANT:  Guilty.

2           THE COURT:  All right.  So, as I said earlier,

3   I have to ask you what it is that you did such that you

4   are, in fact, guilty of Count 1. All right.  So in your

5   own words, why don't you tell me.

6           THE DEFENDANT:  This, right?

7           THE COURT:  So if you would like to read what

8   you've written, that's fine or if you would like to just

9   say it in your own words, whatever makes you more

10  comfortable.

11          THE DEFENDANT:  I'm going to read it.

12          THE COURT:  That's fine.

13          THE DEFENDANT:  In the dates mentioned in the

14  indictment, I was part of a family -- my family

15  organization in order to further -- furthering the

16  purposes of the organization by agreeing with others

17  within the organization by bringing women illegally into

18  the country, women to Queens, New York, and other places.

19  I helped in transporting them from state to state with

20  the aim of benefitting and helping the organization so

21  that it would benefit the -- from their work as

22  prostitutes by promising them falsely --

23          THE COURT:  By promising, I'm sorry, what?

24  Promising?

25          MR. COHEN:  Them falsely.

50

Proceedings

1          THE COURT:  Oh, falsely.

2          THE DEFENDANT:  Falsely -- in such a way as to

3  convince them to work as prostitute even though at times

4  they did not want to do it.  That's all.

5          THE COURT:  Okay.  Let me ask you a few

6  questions.  You said the dates mentioned in the

7  indictment.  When did you just described happen?

8          THE DEFENDANT:  In 2006, 2008.  I don't

9  remember anymore.

10          THE COURT:  All right.  When you said you were

11  part of the organization of your family, is that the

12  Rendon-Reyes family?  Is that the organization?

13          THE DEFENDANT:  My cousins and my uncles and

14  brothers.

15          THE COURT:  Okay.  Was the name of the

16  organization the Rendon-Reyes family?

17          THE DEFENDANT:  And also -- yes, and also the

18  Garcia family and the Rojas family.

19          THE COURT:  Okay.  When you said that you

20  helped illegally --  you helped illegally bring the women

21  to the U.S. -- to the country was it from -- did you

22  bring them from Mexico to the United States?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And then when you said the illegal

25  activities and the entry was to Queens, and you said

51

Proceedings

1   other places, were the other places in the United States?

2            THE INTERPRETER:  The interpreter requests a

3   repetition of your last phrase.

4            THE COURT:  Were there -- she mentioned other

5   places in addition to Queens, New York.  Were those other

6   places in the United States?

7            THE DEFENDANT:  Yes, Atlanta.

8            THE COURT:  All right.  My next question is

9   going to be to Mr. Cohen.  Part of the plea is that she

10  admits to the racketeering acts, Racketeering Act 5(a)

11  and Racketeering Act 7(a).  So the allocution so far,

12  does it cover aspects of the indictment?  Do you want to

13  consult with your client or why don't you talk to her

14  about it first and then I need to ask her about the

15  racketeering acts she committed or she needs to tell me.

16  (Counsel and client confer)

17           MR. COHEN:  Your Honor, referring to the fact

18  that the individuals named there are minors?

19           THE COURT:  So the entire part of the proposal

20  to which she is going to plead guilty in paragraph 1 of

21  the plea agreement is pleading guilty to Count 1 and then

22  also admit as racketeering acts, her participation in sex

23  trafficking of minor Jane Doe 3 who is mentioned in

24  Racketeering Act 5(a) and Count 11, as well as sex

25  trafficking of minor Jane Doe 5, who is mentioned in

Proceedings

1   Racketeering Act 7(a) and Count 14.

2          MS. LEE:  Your Honor, if I could, my

3   understanding of the allocution so far is I believe that

4   and it might be the way that it was phrased, that she has

5   alloouted to sex trafficking and she referred to them

6   generically and the problem that I see right now is that

7   she has not specified the specific Jane Does and who the

8   individuals were that she was referencing that she

9   assisted in being brought here who were given false

10  promises to continue work when they did not want to.

11         THE COURT:  So I agree, that that's the missing

12  piece is the specific references to the two Jane Does and

13  they were -- that they were both minors.  So if what your

14  client meant as the them, she needs to elaborate.  If

15  that wasn't what she was talking about, we need more

16  information.

17         MR. COHEN:  Is that a question to me, your

18  Honor?

19         THE COURT:  Well, I am giving you the chance to

20  talk to your client because right now I think the

21  allocution is incomplete.

22         MR. COHEN:  Okay.

23  (Counsel and client confer)

24         THE COURT:  You're good?

25         MR. COHEN:  Yes.

53

Proceedings

1          THE COURT:  Okay.  I'm sorry.  I turned off the
2    mic.  All right.  Mr. Cohen, is your --
3          MR. COHEN:  One more --
4          THE COURT:  -- client prepared to amplify?
5          MR. COHEN:  One more thing, your Honor, if I
6    may?
7          THE COURT:  You want another minute?  Okay,
8    sure.
9    (Counsel and client confer)
10          THE COURT:  All right.  Mr. Cohen, is your
11    client prepared to amplify that allocution?
12          MR. COHEN:  Yes, Judge.  And if the Court would
13    permit, I think the most efficient way to do it would be
14    just if your Honor would allow me to ask her the
15    questions --
16          THE COURT:  Sure.
17          MR. COHEN:  -- and let her answer.  If I may?
18          THE COURT:  Does the government have any
19    objection?
20          MS. LEE:  No, your Honor.
21          THE COURT:  All right.  That's fine.  Yes,
22    please.
23          MR. COHEN:  Ms. Rendon-Reyes, when you referred
24    earlier to having assisted in smuggling them, were you
25    referring to Jane Does number 3 and 5 named in the

54

Proceedings

1  indictment?

2           THE DEFENDANT:  Yes.

3           MR. COHEN:  And you know that those people were

4  minors?

5           THE DEFENDANT:  Yes.

6           MR. COHEN:  And when you indicated that you

7  engaged in this activity to benefit them, was the them

8  that you referred to, the other people in your family

9  that were engaged in this business and also indicted?

10          THE DEFENDANT:  Yes.

11          MR. COHEN:  Is that sufficient, your Honor?

12          THE COURT:  I'm just looking at the elements

13  for a moment, just because this is a little broken up.

14  Is it correct that you knew that the Jane Does were

15  brought into the U.S. and were going to engage in

16  prostitution?

17          MR. COHEN:  Yes.

18          THE COURT:  That's a question.

19          MR. COHEN:  So, Ms. Rendon-Reyes, did you know

20  that when these two individuals, Jane Doe 3 and 5, were

21  brought into the United States, that they were brought

22  here for purposes of prostitution?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And did you assist in getting them

25  to the United States?

Proceedings

1            THE DEFENDANT:  Yes.

2            THE COURT:  All right.  For the government, did

3   we hit everything?

4            MS. LEE:  I believe so, your Honor.

5            THE COURT:  Okay.

6            MS. LEE:  Thank you.

7            THE COURT:  All right.  Mr. Cohen, anything

8   else that your client would like to add to the record at

9   all?

10            MR. COHEN:  Not at this time, your Honor.

11            THE COURT:  All right.  Ms. Rendon-Reyes, let

12   me ask you a few other questions.  Are you pleading

13   guilty voluntarily and of your own free will?

14            THE DEFENDANT:  Yes.

15            THE COURT:  Has anyone threatened or forced you

16   to plead guilty?

17            THE DEFENDANT:  No.

18            THE COURT:  Other than the promises that are

19   contained in the written agreement that you entered into

20   with the government, which is marked as Government's

21   Exhibit 6, has anyone made any other promises to you to

22   induce you to plead guilty?

23            THE DEFENDANT:  No.

24            THE COURT:  Has anyone made any promises to you

25   to as to what your final sentence will be?

56

Proceedings

1          THE DEFENDANT:  No.

2          THE COURT:  Do you want to go ahead with this

3    guilty plea, even though it is very likely that there are

4    serious immigration consequences for you including

5    possibly your automatic removal from the United States?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And are you pleading guilty of your

8    own free will because you are, in fact, guilty of Count

9    1?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  Based on the

12    information given to me, I find that Ms. Rendon-Reyes is

13    competent and capable of entering an informed plea.  That

14    she is doing so voluntarily, that she understands the

15    charges against her, that she understands her rights, she

16    understands the consequences of her plea and that there's

17    a factual basis in the record as to each of the elements

18    of the offense of Count 1 of the superseding indictment.

19          So, I therefore respectfully recommend that the

20    district judge, Judge Korman, accept the plea of guilty

21    to Count 1 of the superseding indictment.

22          All right.  A few administrative things.  As I

23    mentioned earlier, there's going to be a presentence

24    report prepared about Ms. Rendon-Reyes.  Mr. Cohen, do

25    you want to participate in the interview process?

57

Proceedings

1          MR. COHEN:  I do.

2          THE COURT:  All right.  We'll probation know

3    that.  I'm going to return to the government the original

4    Government's Exhibit 6, which is the plea agreement.

5          I'm assuming that Ms. Rendon-Reyes is going to

6    be continued to be held in custody, is that correct?

7          MR. COHEN:  Yes.

8          THE COURT:  So there's no bail application, is

9    that right?

10         MR. COHEN:  I don't believe she is entitled to

11   bail under the Extradition Act, your Honor.

12         THE COURT:  Okay.  I am just making sure

13   there's no objection.  Okay.  So we already covered her

14   health but is there anything else that needs medical

15   attention at the MDC?

16   (Counsel and client confer)

17         THE DEFENDANT:  No.

18         MR. COHEN:  She doesn't, your Honor.  Every

19   time I see her, I always ask her whether she is getting

20   her medication and she's always said that she is.

21         THE COURT:  All right.  So in terms of the

22   process, this is the last of the eight pleas in this

23   case.  So Ms. Lee, do you have any idea what Judge

24   Korman's schedule is with regard to reviewing the pleas

25   and if he accepts them, the sentencing?

58

Proceedings

1      MS. LEE:  I don't have any information

2  suggesting that he is going to accept the pleas prior to

3  sentencing.  I believe that the --

4      THE COURT:  No, I am sorry.  I meant the whole

5  thing together.  Do you have any information?

6      MS. LEE:  My understanding is that he is having

7  sentencing dates set by  probation.

8      THE COURT:  Okay.

9      MS. LEE:  I know that already the pleas have

10  been wheeled out to probation and they've started

11  assigning officers to it.

12      THE COURT:  Uh-hum.

13      MS. LEE:  So I would estimate that it's the

14  usual time of at least three months or so, until the PSR

15  gets released but I don't know.  I don't have any

16  specific information.

17      THE COURT:  You don't have any -- okay.  All

18  right.

19      So Rendon-Reyes, as I said, there will be a

20  report prepared about you by the probation department and

21  that affects the scheduling of your sentencing but you

22  should stay in touch with your attorney.  Your attorney

23  will be n touch with the United States Attorney's Office,

24  as well as reviewing the docket, so that he knows when

25  the sentencing date is.

59

Proceedings

1          Anything else we should cover here today?

2          MS. LEE:  Not for the government, your Honor.

3          MR. COHEN:  Not from us, your Honor.

4          THE COURT:  Okay.  Thank you.  Take care.  Have

5   a good weekend.

6                (Matter concluded)

7                     -o0o-

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Transcriptions Plus II, Inc.

60

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **24th** day of **May**, 2017.

*Linda Ferrara*

Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.